UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

JEAN KARN,                                              02-CV-0852E(F)

                          Plaintiff,                    MEMORANDUM

          -vs-                                          and

WILLIAMS ADVANCED MATERIALS,                            ORDER[1]

                          Defendant.

_____

      Jean Karn filed this employment discrimination case on December 2, 2002 against her former employer, Williams Advanced Materials ("Williams").  Karn alleges violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et seq.,* the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12101 *et seq.*, the Equal Pay Act ("EPA"), 29 U.S.C. §201 *et seq.* and New York Human Rights Law ("HRL"), Executive Law §296 *et seq.*.  On March 25, 2004, Williams filed a skeletal motion for summary judgment.  On December 17, 2004, Williams filed papers supporting its summary judgment motion.  This motion was argued and submitted on May 6, 2005.  For the reasons set forth below, Williams's motion will be granted in part and denied in part.

      In addressing Williams's summary judgment motion, this Court will apply the familiar standard applicable to motions made pursuant to Rule 56(c) of the Federal Rules of Civil

_____

[1]This decision may be cited in whole or in any part.

Procedure ("FRCvP") — a standard that need not be reiterated here.[2]  It bears noting that Plaintiff's Response To Defendant's Statement Of Undisputed Facts failed to comply with Rule 56.1(b) of the Local Rules of Civil Procedure ("LRCvP"), which provides that "papers opposing a motion for summary judgment shall include a separate, short, and concise statement of the material facts as to which it is contended that there exists a genuine issue to be tried."  Karn's Statement, however, merely denied assertions made by Williams and set out her version of the "undisputed facts."  LRCvP 56.1(b), however, requires plaintiffs to set out the disputed facts — not set forth its version of "undisputed" facts.[3]  Nonetheless, this Court will overlook Karn's non-compliance — but counsel is warned against repeating such.

Williams hired Karn as a security officer responsible for, *inter alia*, guarding precious metals that Williams uses in its production process.  Karn alleges that she was subjected to a hostile working environment, stemming largely from the acts of her supervisor, Claude Lowery.  On September 4, 2001, Karn injured her back while lifting garbage bags to ensure that they did not contain precious metals being smuggled out of the plant.  Karn returned to work with medical restrictions against lifting and certain other movements.  Upon learning of Karn's restrictions, Lowery moved her from third shift to second shift — a shift that involved more lifting because it was the shift on which the garbage bags were searched for contraband.  Karn did not request a shift change because the person with whom she switched

---

[2]*See, e.g., DiStefano* v. *HSBC Bank*, 2004 WL 1563101, at *2 (W.D.N.Y. 2004).

[3]*See Samborski* v. *West Valley Nuclear Servs., Inc.*, 2002 WL 1477610, at *2 (W.D.N.Y. 2002) (discussing LRCvP 56).

told her that his request to search the garbage bags on his regular shift (*i.e.,* second shift) was denied.  Moreover, Karn indicated that Lowery warned her that she would be fired if she ever questioned his authority.  Consequently, Karn continued searching garbage bags on second shift until she finally became totally disabled as of September 14, 2001.  Karn was discharged by Lowery on October 5, 2001, purportedly for "gross misconduct" — to wit, failing to follow company procedure with respect to searching personnel leaving the area containing precious metals.  Karn, however, disputes that such was company policy and contends that employees are permitted to exit the precious metals area without passing through metal detection as long as a security officer accompanies them.

Williams argued that Karn's Title VII claim must fail because she was not "qualified for her position when she was terminated."[4]  This argument fails with respect to Karn's Title VII claim because this Court finds the case cited in support of Williams's argument — *Williams* v. *R.H. Donnelley, Inc.*, 199 F. Supp. 2d 172, 177 (S.D.N.Y. 2002), *aff'd*, 368 F.3d 123 (2d Cir. 2003) — to be distinguishable.  *Williams* involved a plaintiff who was totally disabled when she applied for a promotion.  Karn, on the other hand, held a position from which she was discharged.  This Court declines to analogize from a denial of an application by an applicant who is totally disabled to a case involving an ostensibly qualified employee who arguably becomes "unqualified" by reason of disability.[5]  Moreover, Williams has not

---

[4]Def.'s Mem. of Law, at 5-7.

[5]At least one other district court has so applied *Williams*.  *See, e.g., Pesok* v. *Hebrew Union*
(continued...)

proffered authority that convinces this Court that a "qualified individual" under the ADA is necessarily someone who "was performing [her] duties satisfactorily"[6] within the meaning of Title VII.

Furthermore, Williams failed to assert a legitimate, non-discriminatory reason for Karn's discharge, preferring instead to rely on its argument concerning Karn's purported failure to establish a *prima facie* case.  Indeed, Williams asserted in its reply brief that Karn's evidence concerning the reason for her termination was irrelevant.  This Court disagrees.  Finally, Williams failed to contest the other three elements of Karn's Title VII claim.  Consequently, Williams has not satisfied its burden of demonstrating that it is "entitled to a judgment as a matter of law"[7] and Karn's Title VII and HRL claims will not be dismissed.[8]

With respect to Karn's ADA claim, Williams attempts to have it both ways.  Williams

_____

[5](...continued)
*College - Jewish Inst. of Religion*, 235 F. Supp. 2d 281, 287-288 (S.D.N.Y.), *aff'd*, 2004 WL 238315 (2d Cir. 2004).  This Court, however, declines to follow *Pesok*.

[6]The Second Circuit Court of Appeals has noted that a *prima facie* Title VII claim requires a plaintiff to show that she:

> "(1) is a member of a protected class; (2) was performing [her] duties satisfactorily; (3) was discharged; and (4) [was discharged] under circumstances giving rise to an inference of discrimination on the basis of his membership in the protected class."  *Graham* v. *Long Isl. R.R.*, 230 F.3d 34, 38 (2d Cir. 2000).

Plaintiff's burden is a "minimal one."  *Ibid.*

[7]FRCvP 56(c).

[8]HRL claims are governed by the same standard governing Title VII claims.  *Quinn* v. *Green Tree Credit Corp.*, 159 F.3d 759, 765 (2d Cir. 1998).

argued that Karn was totally disabled for purposes of her Title VII claim, but that she failed to proffer sufficient proof of disability for purposes of her ADA claim — despite the fact that Williams relied on the same evidence in support of its assertion of total disability with respect to its Title VII argument.[9]  Even assuming *arguendo* that Williams can make such a nuanced argument, there is a genuine issue of material fact whether Karn was disabled for purposes of the ADA.[10]  Karn has proffered evidence sufficient to permit a reasonable jury to find that she was disabled within the meaning of the ADA when she was terminated.[11]  Indeed, Karn has proffered evidence that her disability prevented her from lifting, walking or working.[12] On the other hand, Williams has proffered evidence that, at the time Karn was terminated,

---

[9]Moreover, the cases cited by Williams in support of its assertion that Karn's medical records are inadmissible hearsay do not support such an assertion.  *See, e.g., Dietrich* v. *E.I. DuPont de Nemours*, 2004 WL 2202656, at *8 (W.D.N.Y. 2004) (finding doctors's letters to be inadmissible hearsay because such were not accompanied by medical records).  Karn's medical records, however, are admissible. *See, e.g.,* Fed. R. Evid. 803(4).

[10]In its memorandum of law, Williams stated that:

> "the uncontroverted evidence shows that plaintiff became totally disabled from working on September 14, 2001, three weeks prior to her termination on October 5, 2001, that she was totally disabled and unable to perform the duties of her Security Officer position when she was terminated on October 5, 2001, and that she remains totally disabled from working (Karn Dep. 110, 113-16; Grasso Dec. Ex. F and Ex. A ¶ 16)."

[11]*See, e.g., Adams* v. *Master Carvers of Jamestown, Ltd.*, 2004 WL 335192, at *2 (2d Cir. 2004) (discussing "disability" within the meaning of the ADA); *Picinich* v. *United Parcel Serv.*, 321 F. Supp. 2d 485, 499-502 (N.D.N.Y. 2004) (discussing "disability" within the meaning of the ADA and the HRL).

[12]*See, e.g., Colwell* v. *Suffolk County Police Dep't*, 158 F.3d 635, 642 (2d Cir. 1998) (discussing regulatory definition of major life activities — including walking and working — and other major life activities such as sitting, standing, lifting or reaching).

it was expected that she would eventually return to work.[13]   This, however, merely

underscores the fact that there is a genuine issue of material fact whether Karn was disabled

within the meaning of the ADA when she was terminated.   Moreover, even assuming

*arguendo* that Karn was only temporarily disabled, Williams would have been required to

provide her with reasonable accommodation by providing her a short leave of absence.[14]

Consequently, Karn has proffered evidence creating a genuine issue of material fact whether

Williams failed to provide her with a reasonable accommodation that would have permitted

her to perform her essential job functions.   Accordingly, Karn's ADA claims will not be

dismissed.

With respect to Karn's hostile work environment claim, this Court will consider all the

alleged acts because some of them occurred within three hundred days of the filing of her

administrative charge.[15]   There are two requirements for a hostile work environment claim:

(1) "that the workplace was permeated with discriminatory intimidation that was sufficiently

severe or pervasive to alter the conditions of her work environment" and (2) "that a specific

---

[13]Def.'s Statement of Material Facts, ¶ 10.

[14]*Adams*, *supra* note 11, at *3 (noting that temporary leaves of absence may be deemed reasonable accommodations).  Williams attempted to restrict the period of reasonable accommodation to September 14, 2001, the last day that Karn showed up for work.  Karn was terminated on October 5, 2001.  Williams was aware of Karn's condition because she was required to provide them with periodic reports of her condition.  Consequently, Williams cannot claim that it was unaware of Karn's need for a temporary leave of absence — as determined as of the date of Karn's termination.

[15]*Petrosino* v. *Bell Atlantic*, 385 F.3d 210, 220 (2d Cir. 2004) (applying *Nat'l R.R. Passenger Corp.* v. *Morgan*, 536 U.S. 101, 117 (2002)).

basis exists for imputing the conduct that created the hostile environment to the employer."[16]
This Court finds that Karn satisfied both elements because she proffered evidence that the
environment of intimidation was objectively pervasive and that Karn so construed it.[17]  Karn
has proffered evidence of discriminatory intimidation that was sufficiently pervasive and
which altered the conditions of her environment.  For example, Karn has proffered evidence
that her supervisor: (1) called Karn "honey", (2) spoke pejoratively of former female security
officers and stated that he would see how long Karn would last, (3) called Karn a "bitch" on
at least one occasion, (4) stated in Karn's presence on three occasions that women belong
in the home, (5) told Karn that he would never hire another woman security officer if she did
not "work out" and (6) used exterior security cameras, in Karn's presence, to view the breasts
and buttocks of female employees.[18]  Karn also proffered evidence that Lowery treated male
employees more favorably than female employees.[19]   Moreover, Karn's hostile work
environment may be imputed to Williams because it was the result of the actions of a
supervisor and resulted in Karn's termination.[20]  In response to Karn's argument that the
affirmative defense of *Faragher* v. *City of Boca Raton*, 524 U.S. 775, 807 (1998) is

---

[16]*Petrosino*, *supra* note 15, at 221.

[17]*Petrosino*, *supra* note 15, at 221.

[18]*See generally* Def.'s Statement of Material Facts, ¶¶ 12-23 (citing evidence in the record).

[19]*See, e.g.,* Pl.'s Mem. of Law, at 2, 7 (citing instances in the record demonstrating that Lowery
treated male and female employees differently under similar circumstances).

[20]*Petrosino*, *supra* note 15, at 225.

- 7 -

inapplicable, Williams argued that such rule presupposes a viable termination claim — and Williams therefore rested on the premise that no such claim existed.[21]  This Court, however, has found that Karn has a viable Title VII claim.   Finally, this Court rejects Williams's argument that Karn failed to exhaust her administrative remedies by raising her hostile environment claim with the EEOC.   Karn's EEOC charge noted that, *inter alia*, she "endure[d] a constant barrage of profanity from my supervisor."  Compl. Ex. 1 ¶6.  Although it is a close call, Karn's administrative charge placed the EEOC and Williams on notice of alleged harassment by her supervisor and a possible investigation by the EEOC stemming from such charge would have been reasonably related to Karn's other allegations of harassment by Lowery.[22]   Accordingly, Karn's hostile work environment claim will not be dismissed because a reasonable jury could find that her workplace was permeated with discriminatory intimidation that was sufficiently pervasive and that such altered her work environment.

This Court declines Williams's invitation to deem Karn's ostensible failure to address its argument concerning dismissal of Karn's EPA claim as a waiver on this point because, although Karn's counsel failed to specifically address such in Plaintiff's Memorandum of Law,

---

[21]Moreover, Karn correctly noted that the *Faragher* affirmative defense is not applicable where "the supervisor's harassment culminates in a tangible employment action, such as discharge ∗∗∗ ." *Faragher*, at 808.

[22]*See, e.g., Robinson* v. *Getinge/Castle, Inc.*, 2005 WL 272964, at *3-4 (W.D.N.Y. 2005) (holding that plaintiff exhausted his administrative remedy with respect to hostile work environment claim where the charge alleged racial slurs by plaintiff's supervisor).

Karn's other papers in opposition to Williams's motion indicate that Karn has not abandoned her EPA claim.[23]  Williams cited to this Court's analysis of an EPA claim in *Fayson v. Kaleida Health, Inc.*, 2002 WL 31194559, at *9 (W.D.N.Y. 2002), which noted that a *prima facie* case under the EPA requires a plaintiff to show that:  (1) the employer pays different wages to employees of the opposite sex, (2) the employees perform equal work on jobs requiring equal skill, effort and responsibility and (3) the jobs are performed under similar working conditions.   The EPA does not require discriminatory animus and the establishment of a *prima facie* case shifts the burden of persuasion to the employer.   *Ibid.*   Karn failed to establish a *prima facie* case because she has failed to proffer evidence that Karn's replacement, Stephen Palumbo, was paid more than Karn was paid.   Accordingly, Karn's EPA claim will be dismissed.

---

[23]*See, e.g., Lipton* v. *County of Orange, N.Y.*, 315 F. Supp. 2d 434, 446 (S.D.N.Y. 2004) (noting that a district court may deem a plaintiff's claim to be abandoned where plaintiff fails to address defendant's summary judgment arguments with respect to such claim but suggesting that the court's discretion in this regard should be tempered by the maxim that "foolish consistency is reputedly the hobgoblin of little minds") (quoting Ralph Waldo Emerson, *Self Reliance*, in ESSAYS: FIRST SERIES (1841)) (citation omitted).

Finally, this Court did not consider the affidavits submitted by Karn to which Williams objected in its reply memorandum.

Accordingly, it is hereby **ORDERED** that Defendant's summary judgment motion is granted in part and denied in part, that Plaintiff's Equal Pay Act claim is dismissed, that Defendant's motion for summary judgment is otherwise denied and that the parties shall appear before Part III of this Court on July 8, 2005 at 3:00 p.m. (or as soon thereafter as they may be heard) to set a date for trial.[24]

DATED:        Buffalo, N.Y.

              June 9, 2005


                                        _____/s/ John T. Elfvin_____
                                        JOHN T. ELFVIN
                                        S.U.S.D.J.

---

[24]Inasmuch as Karn's allegations appear to create more than a little smoke, the parties are strongly encouraged to settle this matter.  Indeed, a settlement conference with either Judge Foschio or Judge Bianchini may be advisable.