UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

JEAN KARN,                                                    02-CV-0852E(F)

                         Plaintiff,                           MEMORANDUM

          -vs-                                                          and

WILLIAMS ADVANCED MATERIALS,                                  ORDER[1]

                         Defendant.

_____

On June 13, 2005 this Court issued a Memorandum and Order granting in
part and denying in part Defendant's motion for summary judgment.  In that
Order the Court concluded that Defendant had failed to establish the absence of
genuine issues of material fact as to whether Plaintiff had stated a *prima facie*
case of gender discrimination under Title VII of the Civil Rights Act, ("Title VII"),
42 U.S.C. §2000e *et seq.*, and disability discrimination under the Americans with
Disabilities Act ("ADA"), 42 U.S.C. §12101 *et seq.*[2]  On June 27, 2005 Defendant
filed the instant motion for reconsideration of that Order.[3]  Plaintiff filed an

---

[1]This decision may be cited in whole or in any part.

[2]Inasmuch as they are analyzed under the same standards as claims under Title VII and
the ADA, Plaintiff's claims for gender and disability discrimination under the New York State
Human Rights Law also survived the motion for summary judgment.  The Court dismissed
Plaintiff's Equal Pay Act claim.

[3] Defendant's motion was styled as a Motion for Relief from Judgment pursuant to Rule
60(b) of the Federal Rules of Civil Procedure ("FRCvP").  Realizing that FRCvP 60(b) does not
provide for relief in this circumstance, Defendant subsequently disavowed any reliance on
FRCvP 60(b) and argued that the motion should be treated instead as one for reconsideration.

opposition to the motion urging the Court to deny reconsideration.  The Court heard oral argument on September 2, 2005 and the matter was submitted. Defendant's motion for reconsideration will be granted.  Upon reconsideration, the Court concludes that Plaintiff's claim for failure to accommodate under the ADA will be dismissed in part.

## DISCUSSION

The standard for granting a motion for reconsideration is a strict one.  Such motions "will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked — matters, in other words, that might reasonably be expected to alter the conclusions reached by the court."  *Shrader* v. *CSX Transp.*, 70 F.3d 255, 256-57 (2d Cir. 1995).  Courts have granted motions for reconsideration in order to correct "manifest errors of law or fact or to consider newly discovered evidence." *Idylwoods* v. *Mader Capital, Inc.*, 956 F. Supp. 410, 412 (W.D.N.Y. 1997) (internal citations omitted).  Such motions are also proper when there has been an intervening change in the controlling law.  *Arons* v. *LaLime*, 3 F. Supp.2d 328, 330 (W.D.N.Y. 1998).

Here, Defendant does not claim an intervening change in the law or that new evidence has come to light.  Rather, Defendant claims that the Court erred as a matter of law when it concluded (1) that Plaintiff was qualified for her position within the meaning of both Title VII and the ADA at the time of her

termination; (2) that questions of fact exist as to whether a temporary leave of absence would have been a reasonable accommodation of Plaintiff's alleged disability and (3) that Defendant is vicariously liable for any sexual harassment experienced by Plaintiff.

Defendant argues that, in order to state a claim for gender discrimination under Title VII, Plaintiff must show, among other things, that she is "qualified" for the particular position.  Defendant argues that the Court erred in determining that Plaintiff had satisfied her *prima facie* burden because the undisputed evidence is that, on the date of her termination, Plaintiff could not perform her duties due to her back injury and thus she was "unqualified" for her position. Plaintiff counters that the relevant inquiry is whether she was satisfactorily performing her duties at the time of her termination and, despite her absence from work on the date of her termination, her performance was satisfactory.

Plaintiff is correct.  The elements of a *prima facie* case of discriminatory discharge under Title VII are: (1) that she is a member of a protected class; (2) that she is competent to perform the job or is performing her duties satisfactorily; (3) that she suffered an adverse employment decision or action and (4) that the decision or action occurred under circumstances giving rise to an inference of discrimination based on her membership in the protected class.  *Dawson* v. *Bumble & Bumble*, 398 F.3d 211, 216 (2d Cir. 2005).  "A plaintiff's burden of

establishing a *prima facie* case is *de minimis*."  *Abdu-Brisson* v. *Delta Air Lines, Inc.*, 239 F.3d 456, 467 (2d Cir. 2001).  Importantly, the Second Circuit Court of Appeals has stated that "the qualification prong must not be interpreted in such a way as to shift into the plaintiff's *prima facie* case an obligation to anticipate and disprove the employer's proffer of a legitimate, non-discriminatory basis for its decision."  *Gregory* v. *Daly*, 243 F.3d 687, 696 (2d Cir. 2001).

While courts have held that certain employment deficiencies such as chronic absenteeism or a lengthy history of disciplinary measures for unsatisfactory performance prevent a plaintiff from demonstrating satisfactory performance of the position for purposes of the *prima facie* case[4], such is not the case here.  It is undisputed that Plaintiff performed her duties for Defendant from August 1998 to September 14, 2001, the date on which her back injury prevented her from working.  Plaintiff received performance reviews of "good" and "very good."  *See* Exhibit B to Affirmation in Opposition to Summary Judgment, Dkt. 55. There is no evidence in the record of any deficit in plaintiff's performance of her duties prior to her work-related injury.  On the date of her termination, October 5, 2001, other than her absence from work for a work-related injury — the severity

---

[4]*See, e.g., Dugan* v. *Martin Marietta Aerospace*, 760 F. 2d 397, 400 (2d Cir. 1985) (holding that plaintiff who, after working for 33 days, took leave of 2 months and anticipated additional leave of 2 to 3 weeks, was not performing satisfactorily).

of which was unknown at that time — plaintiff was performing her duties satisfactorily.

Under the ADA, a plaintiff's prima facie case consists of the following elements: (1) that the employer is subject to the ADA; (2) that the employee is disabled within the meaning of the ADA; (3) that the employee is otherwise qualified to perform the essential functions of the job, with or without a reasonable accommodation; and (4) that the employee suffered adverse employment action because of the disability. *Shannon* v. *New York City Transit Auth.*, 332 F.3d 95, 99 (2d Cir. 2003). Defendant argues that Plaintiff cannot satisfy the third element because on the date of her termination she was totally disabled from working and unable to perform the essential functions of her job with or without a reasonable accommodation.

Whether an employee is otherwise qualified to perform her job is measured as of the time of the adverse employment action. *Henzel* v. *Delaware Otsego Corp.*, 285 F. Supp.2d 271, 277 n.8 (N.D.N.Y. 2003). Defendant appears to argue that the only relevant time period for assessing Plaintiff's ability to work is the date of her termination. Plaintiff's Complaint, however, clearly alleges that after initially injuring her back she returned to work with a request to accommodate her restrictions of limited lifting and bending and that, in response, Defendant changed her shift to one on which *more* lifting and bending was required.

- 5 -

Plaintiff further alleges that, as a result of her placement on that shift, her back injury was exacerbated and resulted in her current total disability.  Thus, the Court construes Plaintiff's Complaint to allege two distinct failures to accommodate by Defendant.

As to the first alleged failure, after Plaintiff was injured on September 4, 2001, Plaintiff has stated a *prima facie* case.  There is no dispute that Defendant is subject to the ADA.  As this Court previously determined, there is an issue of fact as to whether Plaintiff was disabled within the meaning of the ADA.  There is no dispute that Plaintiff was able to perform the essential functions of her position with a reasonable accommodation because she, in fact, returned to work and performed her job until her further injury on September 14, 2001.  Finally, the Court concludes that there is an issue of fact as to whether Plaintiff suffered an adverse employment action because of her disability.  "A transfer of an employee to a job the employer knows or should know the employee cannot perform can constitute an adverse employment action."  *Jackson* v. *Heidelberg, LLC*, 2005 WL 735961, at *5 (W.D.N.Y. 2005) (internal citations omitted).  Therefore, to the extent Plaintiff's claim for disability discrimination is based on Defendant's change of her shift after her initial injury on September 4, 2001, Plaintiff has sustained her *prima facie* burden and Defendant's motion for reconsideration will be denied.

The opposite conclusion is reached with respect to the second aspect of Plaintiff's disability claim however.  Plaintiff also alleges that, in terminating her employment on October 5, 2001, Defendant failed to reasonably accommodate her disability by means of a leave of absence.  Defendant argues that Plaintiff's claim must be dismissed because she cannot demonstrate that, on the date of her discharge, any accommodation, including a reasonable leave of absence, would have allowed her to perform the essential functions of her position.  The Court agrees.

On September 14, 2001, Plaintiff exacerbated her back injury and, as a result, she was totally disabled from working.  Plaintiff does not dispute that, from September 14, 2001 to the present time, she has been totally disabled from working.  Notwithstanding the fact that the severity of Plaintiff's condition was unknown on October 5, 2001, and thus Defendant could not have known on the date of her termination that she would remain totally disabled, Plaintiff cannot satisfy the third element of her *prima facie* case.  Thus, to the extent her disability discrimination claim relies on the actions Defendant took after September 14, 2001, the claim must be dismissed, and Defendant's motion for reconsideration will be granted as to this aspect of Plaintiff's ADA claim.[5]

---

[5]The Court also concludes that there is no evidence that, after her back injury was exacerbated on September 14, 2001, Plaintiff sought any accommodation from Defendant prior

(continued...)

Finally, inasmuch as the alleged gender and/or disability discrimination resulted in a tangible employment action, the Court confirms that the *Ellerth/Farragher* affirmative defense to Plaintiff's hostile work environment claim is unavailable to Defendant.  The defense is not available "when the supervisor's harassment culminates in a tangible employment action, such as discharge, demotion or undesirable reassignment."  *Faragher* v. *City of Boca Raton*, 524 U.S. 775, 808 (1998).  Thus, should a jury conclude that Plaintiff's supervisor subjected her to a hostile work environment, Defendant will be vicariously liable for that conduct.

Accordingly, it is hereby **ORDERED** that Defendant's motion for reconsideration is granted to the extent that Plaintiff's claim for disability discrimination is dismissed with respect to Defendant's conduct after September 14, 2001 but is denied in all other respects, that the parties will proceed to trial on the remaining claims — specifically, gender discrimination and hostile work environment under Title VII, disability discrimination for Defendant's alleged conduct prior to September 14, 2001 and the attendant state law claims for the same and that parties shall appear before the undesigned on the 7th day of April,

---

[5](...continued)
to her termination on October 5, 2001.  However, the Court notes that Plaintiff had been absent from work for approximately three weeks when she was terminated.  Plaintiff was still undergoing testing to determine the precise nature and severity of her injury at the time of her termination.

2006 at 3:00 p.m. (or as soon thereafter as they may be heard) to set a date for

trial.

DATED:       Buffalo, N.Y.

             February 14, 2006

                                          _____/s/ John T. Elfvin_____
                                               JOHN T. ELFVIN
                                                  S.U.S.D.J.